IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CARLOS MICHILENO-VALENCIA, ) | |
| ) | |
| Petitioner, ) | Civil Action Number |
| vs. ) | **1:13-cv-1045-AKK-TMP** |
| ) | |
| JOHN ROTHMAN, Warden ) | |
| FCI-Talladega, ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM OPINION

On December 9, 2013, the magistrate judge filed his report and recommendation that the court treat the petition filed by the petitioner on May 30, 2013, as one under 28 U.S.C. § 2241, and dismiss the petition for want of jurisdiction because petitioner cannot successfully open the "§ 2241 portal" under the savings clause in § 2255. Petitioner timely filed his objections to the report and recommendation, and further supplemented them thereafter. Having now carefully reviewed and considered *de novo* the report and recommendation, the objections to it, and other materials in the court file, the court finds that the objections are to be and hereby are OVERRULED, and the report and recommendation is ADOPTED and ACCEPTED.

Petitioner makes two principal objections: (1) the magistrate judge incorrectly determined that petitioner cannot meet the first and third prongs of the test in Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999) ("the Wofford test"), for invoking the § 2255 savings clause, and (2) the magistrate judge erroneously determined that the Eleventh Circuit's decision in United States v. Bellaizac-Hurtado, 700 F.3d 1245 (11th Cir. 2012), has no application to petitioner's conviction. The court addresses both contentions below.

## A.     Alleged incorrect application of the Wofford test

On the first objection, petitioner contends that the Eleventh Circuit recently changed the Wofford test in Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013). In Bryant, a sentencing case instead of a challenge to the underlying conviction, the Eleventh Circuit explained its "synthesis" of the Wofford line of cases this way:

> *Wofford*, *Gilbert II*, and *Williams* guide us on what the statutory terms in § 2255(e)'s savings clause mean and how to read § 2255(e) in a way that does not eviscerate or undermine § 2255(h)'s restrictions on second or successive § 2255 motions but also affords some meaning to the savings clause.
>
> To show his prior § 2255 motion was "inadequate or ineffective to test the legality of his detention," Bryant must establish that (1) throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed Bryant's distinct prior state conviction that triggered § 924(e) and had squarely foreclosed Bryant's

> § 924(e) claim that he was erroneously sentenced above the 10–year statutory maximum penalty in § 924(a); (2) subsequent to his first § 2255 proceeding, the Supreme Court's decision in *Begay*, as extended by this Court to Bryant's distinct prior conviction, overturned our Circuit precedent that had squarely foreclosed Bryant's § 924(e) claim; (3) the new rule announced in *Begay* applies retroactively on collateral review; (4) as a result of *Begay*'s new rule being retroactive, Bryant's current sentence exceeds the 10–year statutory maximum authorized by Congress in § 924(a); and (5) the savings clause in § 2255(e) reaches his pure § 924(e)-*Begay* error claim of illegal detention above the statutory maximum penalty in § 924(a).

Bryant, 738 F.3d at 1274. Although Bryant renumbered and added to the Wofford three-prong test used by the magistrate judge, the same concepts the magistrate judge used remain applicable. Specifically, the magistrate judge concluded that the petitioner could not show that any retroactively applicable Supreme Court case implicated the validity of his conviction and that circuit precedent squarely foreclosed the petitioner's argument. These conclusions remain valid as they are consistent with, respectively, the second and first prongs of the test enunciated in Bryant. Indeed, petitioner does not cite any retroactively applicable Supreme Court decision that purportedly overrules circuit precedent in any way relevant to this conviction. As the magistrate judge noted, petitioner cites only United States v. Bellaizac-Hurtado, 700 F.3d 1245 (11th Cir. 2012), which has no relevance to the issues here. More specifically, even assuming a circuit case could operate under the Bryant test as

petitioner asserts, Bellaizac-Hurtado did not overrule circuit precedent, and, in fact, expressly says that it involved a question of first impression in this circuit. Thus, even under the Bryant explication of the § 2255 savings clause, the magistrate judge correctly determined that petitioner cannot successfully open the § 2241 portal.

**B.     Alleged erroneous reading of Bellaizac-Hurtado**

Petitioner's second objection is that the magistrate judge misread and misunderstood the holding in Bellaizac-Hurtado, and that a correct reading would reveal that the government convicted the petitioner under an unconstitutional statute. Contrary to petitioner's contention, the magistrate judge correctly recognized that Bellaizac-Hurtado, which involved the territorial waters of another nation, is fundamentally distinguishable from petitioner's case because petitioner was convicted of drug trafficking aboard a ship without nationality "on the high seas." In Bellaizac-Hurtado, the court discussed the various constitutional bases on which Congress could criminalize conduct beyond the borders of the United States.  Specifically, Article I, sec. 8, cl. 10 of the Constitution grants Congress the power to legislate with respect to three areas: piracies, felonies on the high seas, and offenses against the Law of Nations.  Although the court found that drug trafficking is not an offense against the Law of Nations and, thus, beyond Congress's constitutional power to proscribe under the Law of Nations, the court expressly affirmed that Congress has more

expansive powers to legislate with respect to "felonies on the high seas." Bellaizac-Hurtado, 700 F.3d at 1257. The distinction is critical in this case because, unlike the defendant in Bellaizac-Hurtado, petitioner's drug trafficking occurred on the high seas—in international waters. Thus, Bellaizac-Hurtado simply does not apply to his conviction.

Perhaps because petitioner recognizes that Bellaizac-Hurtado involved offenses occuring in territorial waters of sovereign nations, petitioner abandoned his original acknowledgment that the charge against him involved trafficking in international waters of the eastern Pacific Ocean, and now contends that he was actually in the territorial waters of Panama. Based on Article 55 of the United Nations Convention on the Law of Nations ("UNCLOS"), petitioner contends:

> The United Nations Convention of the Law of the Sea (UNCLOS) states in article 55 that the Exclusive Economic Zone is an area beyond and adjacent to the territorial sea and that Article 57 states that the [Exclusive] Economic Zone shall not extend beyond 200 nautical miles from the baselines from which the breadt[h] of the territorial sea is measured, and the fact that he was arrested about 110 miles [] south of the Isla de Coiba in Panama, thus established that Petitioner was on Panamanian Territorial Waters not on International Waters.

(Doc. 6, p. 3). The short answer to this argument, however, is that the United States is not a signatory to UNCLOS and, as such, is not bound to UNCLOS' definition of

territorial waters or Exclusive Economic Zones. United States v. Ali, 718 F.3d 929, 936 (D.C. Cir. 2013); United States v. Jho, 534 F.3d 398, 406 (5th Cir. 2008).[1] But even assuming the United States is somehow bound by UNCLOS, the Convention itself differentiates the "territorial seas" of a nation from the "Exclusive Economic Zone," which lies "*beyond and adjacent* to the territorial sea." Article 55, Third United Nations Convention on the Law of the Sea, 21 I.L.M. 1245 (1982) (*italics added*). While UNCLOS authorizes the coastal State to explore and economically exploit the Exclusive Economic Zone ("EEZ"), subject to the provisions of UNCLOS, it does not make the EEZ part of the territorial waters of the coastal State, which waters extend only 12 miles from the coast. Article 3, Third United Nations Convention on the Law of the Sea; United States v. Jho, 534 F.3d 398, 407 (5th Cir. 2008) ("The 'territorial sea' … is a coastal zone defined by UNCLOS as a belt of sea not exceeding 12 nautical miles from the coast."); cf. Grupo Protexa, S.A. v. All American Marine Slip, a Div. of Marine Office of America Corp., 20 F.3d 1224, 1240 (3d Cir. 1994) (holding that shipwreck more than 12 miles from coast but within EEZ not within territorial waters of Mexico). The EEZ under UNCLOS simply is not the same as that nation's territorial waters. Thus, petitioner's argument that he was in

---

[1] Although it appears the United States has recognized UNCLOS through UN Security Council resolutions, it has done so only with respect to UNCLOS's impact on piracy, not other felonies "on the high seas." Ali, 718 F.3d at 936.

Panamanian territorial waters, like the defendant in <u>Bellaizac-Hurtado,</u> fails.

Because petitioner has failed to open the "§ 2241 portal" by establishing that the remedy under § 2255 is inadequate or ineffective, the magistrate judge correctly determined that petitioner could not proceed under § 2241 because § 2255 and its restriction on "second and successive motions" remains the exclusive remedy for petitioner. The § 2241 petition must be dismissed without prejudice because the court thus lacks jurisdiction to consider it. By separate order the petition will be DISMISSED for want of jurisdiction.

The Clerk is DIRECTED to mail a copy of the foregoing to the petitioner.

**Done** the 18th day of March, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE